### 988.　RAY, *alias* MOORE, *v.* THE STATE.

1. In prosecutions for larceny, if the ownership of the stolen property is unknown to the grand jury, it may be so charged in the indictment; but if it appears upon the trial that it was in fact known, or that in the exercise of reasonable inquiry it might have been ascertained with such certainty as would have justified the grand jury in asserting it, there is a fatal variance. However, if it was unknown to the grand jury at the time of their action on the case, its subsequent discovery and proof on the trial will not constitute such a variance.
2. The corpus delicti of a larceny may be proved by circumstantial evidence.
3. As a general rule, in the prosecution of a particular crime, evidence tending to show that the defendant has committed other offences is not admissible; but where the testimony offered has a distinct relevancy

to the case on trial, it is not inadmissible merely because it also tends to show the defendant's connection with some other criminal transaction.

4. Minor and immaterial errors in the admission of testimony will not work a reversal.

5. Trial judges should usually leave the examination of witnesses to the attorneys conducting the case. However, when the record fails to show any prejudice to the complaining party, a new trial will not be granted because the judge asked questions of witnesses.

Indictment for larceny, from Dougherty superior court—Judge Spence. January 6, 1908.

Submitted March 10,—Decided March 16, 1908.

*J. W. Walters & Sons,* for plaintiff in error.

*W. E. Wooten, solicitor-general,* contra.

POWELL, J. The defendant was charged in the indictment with having stolen a bale of lint cotton, "the marks, brands, and owner being to the grand jurors unknown." It was shown that he was an employee of a compress company at Albany; his true name was Frank Ray; he caused a negro drayman to take a bale of cotton from the compress yard to a warehouse; it bore a tag in the name of W. M. Moore and was stored in the warehouse under that name; he called at the warehouse and in the name of Moore sold the cotton, taking in payment a check payable to W. M. Moore, which he indorsed in that name and collected at the bank; he sold and collected for two or three other bales of cotton in similar name and manner during the same season; he was not a cotton planter or anything of that kind, but was a mere compress foreman; the compress company had no customer by the name of W. M. Moore; and no such man was known in the community. About the time the bale of cotton in question was sold, Carter & Patterson of Sylvester, Ga., sent a car-load of cotton to the compress at Albany, for compressing; the defendant checked it out and reloaded it for shipment to Savannah; upon reloading, the number of bales checked up all right, but later a bale of cotton purporting to be of this shipment was returned from Savannah, showing that it was composed of compress "sweepings," and not of cotton of the character sent by Carter & Patterson to the compress at Albany; in this bale were found certain tags, etc., which indicated that the "sweepings" came from the floor of the Albany compress. In the course of a year's run several bales of these sweepings would accumulate

at the compress, and it frequently devolved upon the defendant, as one of his duties, to bale them. When the bale of cotton alleged to have been stolen was delivered by the defendant to the drayman, to be carried to the warehouse, a piece of the bagging had been cut entirely away from the bale at the place where the mark or brand is usually stamped. The defendant offered no explanation, introduced no testimony, and made no statement. He was convicted; and, his motion for a new trial having been overruled, he brings error.

1. That the defendant stole the bale of cotton in question admits of but little, if any, doubt. It is not one of those close cases in which slight error might warrant the grant of a new trial. The defendant presses the point that the indictment alleges that the ownership of the cotton was unknown, when, as a matter of fact, the State's testimony shows or tends to show that it belonged to Carter & Patterson. The insistence of the State is that the ownership of the cotton was not disclosed with any reasonable certainty by the evidence, and that the testimony as to Carter & Patterson's cotton was offered merely to show how the defendant could have accomplished the larceny of this or any other bale of cotton belonging to any of the compress company's customers. We may concede that it is strongly probable that the particular bale of cotton, for the larceny of which the defendant stood charged, belonged to Carter & Patterson; still this rests so much on suspicion, rather than proof, that we are not willing to say that even if all the facts as to this question which developed at the trial were known to the grand jurors at the time the indictment was returned, that body was not warranted in charging the ownership of the property as unknown. We understood the rule on that subject to be this: If the ownership of the stolen property is unknown to the grand jurors, it may be described in the indictment as being unknown, or unknown to the grand jurors; but if it appears that it was in fact known, or that in the exercise of reasonable inquiry it could have been ascertained with such certainty as would justify the grand jury in asserting that ownership, there is a fatal variance. If it was in fact unknown at the time of the indictment, but is subsequently discovered, proof of it at the trial will not constitute a variance or render the indictment insufficient. *Stringfield* v. *State*, 25 *Ga.* 474, 476, and cit.; *Nelms* v. *State*, 84 *Ga.*

466 (10 S. E. 1087, 20 Am. St. R. 377) ; *Martin* v. *State,* 115 *Ga.* 255 (41 S. E. 576) ; White *v.* People, 32 N. Y. 465 ; Check *v.* State, 38 Ala. 227 ; Hill *v.* Commonwealth, 11 Cush. (Mass.) 137 ; Rex *v.* Bush, Russ. & Ry. 372 ; Clark's Crim. Prac. 168, 229, 233, 340. The instructions of the court on this subject were fully favorable to the accused, and he has no just cause of complaint in respect thereto.

2. Corpus delicti, as well as any other substantive fact of a criminal case, may be proved by circumstantial evidence. State *v.* Williams, 52 N. C. 446 (78 Am. Dec. 248, especially note 6) ; 12 Cyc. 488. "Upon the trial of an indictment for larceny, if the circumstantial evidence satisfies the jury of the guilt of the prisoner, he may be· convicted, though the prosecutor is unable to swear that he has lost the thing charged to have been stolen." The dictum of Lord Hale (2 Hale, 290), that a man should not be convicted of murder or manslaughter on circumstantial evidence alone, unless the body be found, is a rule of prudence, not of law. Reg. *v.* Burton, 6 Cox, C. C. 293, 24 Eng. L. & Eq. 551 ; Reg. *v.* Mockford, 11 Cox, C. C. 16 ; State *v.* Davidson, 30 Vt. 377 (73 Am. D. 312). Of course the circumstantial evidence should be so conclusive as to exclude every reasonable hypothesis other than that a crime has been committed.

3. Exceptions are taken to rulings of the court in allowing proof that the defendant had stored several other bales of cotton in the warehouse, and had sold them in the name of W. M. Moore. It•is true that the evidence may have tended to establish other larcenies on the part of the defendant, but this does not necessarily render the testimony incompetent or irrelevant. As a general rule, in the prosecution of a particular crime, evidence tending to show that the defendant has committed other crimes is not admissible ; and this is always true if the facts proved do not of themselves tend to illustrate the transaction in issue, or to establish some necessary ingredient of the particular offense under investigation. But where the testimony has a distinct relevancy to the case on trial, it is not inadmissible merely because it may also tend to show the defendant's connection with some other criminal transaction. The evidence was relevant in the present case. *Cawthon* v. *State,* 119 *Ga.* 409 (46 S. E. 897) ; *Farmer* v. *State,* 100 *Ga.* 41 (28 S. E. 26) ; 12 Cyc. 406, et seq.

4. One of the witnesses, in telling of the bale of "sweepings," which was probably substituted for one of Carter & Patterson's bales of cotton which they had sent to the compress at Albany, in connection with his testimony describing the condition of the sample taken from the bale of "sweepings," incidentally referred to the receipt of a letter in connection therewith in which it was said that this substituted bale was not worth over three cents a pound. This whole testimony, including the statement as to the contents of the letter, was objected to, and the overruling of the objection constitutes one of the assignments of error in the motion for a new trial. The long-established rule is that where objection is taken to testimony in bulk, if any part of it is admissible as against the objection made, the exception is not well taken. In the present instance, however, since the substitution of the sweepings, and not their value, was the only thing material or of any probative value, any slight or technical error in the admission of the statement made in the letter, that the cotton was not worth but three cents a pound, would not work a reversal. There were a few other similar immaterial errors in the admission of testimony, but none of them are of sufficient importance to justify a reversal.

5. The remaining ground of the motion for a new trial complains of the fact that the trial judge conducted the examination of the State's witnesses. It is true, as we find from the record, that during the progress of the trial the judge asked a great many questions; and this is a practice concerning which this court has freely expressed its lack of approval on several previous occasions. See *Sharpton* v. *State*, 1 *Ga. App.* 542 (57 S. E. 929); *Taylor* v. *State*, 2 *Ga. App.* 723 (59 S. E. 12); *Dicks* v. *State*, 2 *Ga. App.* 192 (58 S. E. 335); *Ford* v. *State*, 2 *Ga. App.* 834 (59 S. E. 88). In the present instance, the examination of the witness by the trial judge was neither so extended nor so pointed as in the cases cited. Where the assignment of error is general, as it is in this case, and no particular language or question of the judge is specifically pointed out as being in violation of our code section prohibiting the trial judge from expressing any opinion as to what has or has not been proved, the court looks only to the assignment as an entirety, to see whether the examination has been conducted in such manner as substantially to prejudice the rights of the accused and to render the trial unfair in the legal sense of the word. Thus

viewing the examination of the witnesses as made by the judge in the case at bar, we can not find that the defendant's interests were prejudiced; indeed, if the questions asked by the judge, when taken in connection with the context, are capable of conveying any intimation as to the state of his mind regarding the case, they convey rather the impression that the judge was doubtful of the sufficiency of the State's case, and was really trying to see whether the State's witnesses in fact knew all they were attempting to testify about. We do not think it can be legitimately said that the court's conduct in this respect in any wise operated to the injury of the defendant. However, it is unnecessary for us to repeat what we have so often said before, as to the advisability of our trial judges leaving to counsel, especially in cases so ably represented on both sides as the one at bar, the examination of witnesses, especially as to all material or contested issues in the case. We have never meant to say that the trial judge should be a mere figurehead; that he might not ask casual questions for any incidental purpose, provided that he take care and caution so to frame and time his question that the jury could not be misled into believing that the judge was either crediting or discrediting the witnesses, or that he thought that some particular fact was especially material or immaterial.

After a careful survey of the record we are of the opinion that the defendant's guilt was fully shown, and that no material error prejudicial to him has been committed. The judgment refusing him a new trial is therefore                    *Affirmed.*